**RAINES FELDMAN LLP**
Hamid R. Rafatjoo (Bar No. 181564)
  hrafatjoo@raineslaw.com
Stephen P. Farkas (Bar No. 234060)
  sfarkas@raineslaw.com
1800 Avenue of the Stars
12th Floor
Los Angeles, CA 90067
Telephone: (310) 440-4100
Facsimile:  (310) 691-1367

Attorneys for Prema Thekkek and Antony Thekkek

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>FELICIDAD FERRER and RENATO FERRER<br><br>Debtors. | Case No. 2:17-bk-13256-ER<br><br>Chapter 7 |
| PREMA THEKKEK and ANTONY THEKKEK,<br><br>Plaintiffs,<br><br>v.<br><br>FELICIDAD FERRER and RENATO FERRER,<br><br>Defendants. | Adv. Case No. 2:17-ap-01334-ER<br><br>**STIPULATION FOR ENTRY OF JUDGMENT**<br><br>[No Hearing Required] |

-1-

Prema Thekkek and Antony Thekkek (collectively, the "Plaintiffs" and/or the "Thekkeks") and Felicidad Ferrer and Renato Ferrer (collectively, the "Debtors", the "Ferrers" and/or the "Defendants") having agreed to completely and finally resolve this Adversary Proceeding by establishing the amount of the Debtors' debt to the Plaintiffs and resolving any dispute as to the dischargeability of such debt, hereby consent to the following Stipulation and order from the Court as set forth below.

## RECITALS

**A.    The Procedural Background**

1.    On March 17, 2017, the Debtors filed a voluntary petition under chapter 7 of the Bankruptcy Code bearing Case No. 2:17-bk-13256-ER (this "Bankruptcy Case").

2.    On June 23, 2017, Plaintiffs filed a *Complaint (I) For an Accounting; (II) To Determine Non-Dischargeability of Indebtedness [11 U.S.C. § 523(a)(2), (a)(4), and (a)(6)]; And (III) For Denial of Discharge [11 U.S.C. § 727(a)(4)(A), and (a)(7)]*, bearing Adversary Case No. 2:17-ap-01334-ER (the "Adversary Complaint"), based on the following:

**B.    The Corona Transaction**

3.    The Thekkeks own and operate several skilled nursing facilities ("SNF") in California. Trilochan "Bobby" Singh ("Mr. Singh") was employed as Vice President of Operations at several of the Thekkeks' SNFs. In this capacity, Mr. Singh evaluated opportunities to purchase or lease new SNFs. The Thekkeks did not authorize Mr. Singh to make final purchasing decisions; however, Mr. Singh was authorized to negotiate with potential sellers and retain attorneys and brokers in connection with SNF acquisition transactions.

4.    At all relevant times, Mr. Singh engaged A.J. Rana ("Mr. Rana"), a real estate and business broker. Mr. Rana, through his brokerage company, Metro Funding Pros, Inc. ("Metro") assisted Mr. Singh in his efforts to identify potential SNF acquisitions on behalf of the Thekkeks.

5.    In or around September 2012, Mr. Singh, with the assistance of Mr. Rana and Metro, identified Corona Care Convalescent Corporation and Corona Care Retirement, Inc. (collectively "Corona") as a potential SNF investment target. Corona operated a SNF in San

Bernardino County, California.

6.   Mr. Singh, Mr. Rana, and Metro negotiated an investment in Corona with the Ferrers on behalf of the Thekkeks (the "Corona Transaction"). At the time of the negotiation, the Ferrers were the sole equity holders of Corona. Under the terms of the contemplated Corona Transaction, the Thekkeks would purchase 49% of the equity interests in Corona from the Ferrers for $3,013,500 in cash. The Thekkeks would also loan $3,136,500 to the Ferrers pursuant to a written promissory note (the "Note") secured by a pledge of the Ferrers' remaining 51% equity interests in Corona (the "Loan").

7.   Prior to the consummation of the Corona Transaction, Corona was subject to a third party lawsuit, claims by governmental entities for taxes and related fees, and owed millions of dollars to creditors.

8.   On or about September 27, 2012, the Thekkeks and Ferrers consummated the Corona Transaction. The Thekkeks paid a total of $6,625,000 into escrow pursuant to instructions submitted by the Thekkeks' broker, Mr. Rana acting through Metro, including $85,000 in escrow closing costs. Likewise, on or about September 27, 2012, the Ferrers executed the Note and related pledge agreement (the "Pledge Agreement") and provided the Thekkeks with a buyers' statement, stock certificates, and corporate documents confirming the consummation of the Corona Transaction.

9.   Following consummation of the Corona Transaction, Mr. Thekkek became President and Chief Executive Officer of Corona and Mrs. Thekkek became Treasurer and Chief Financial Officer of Corona. Mrs. Ferrer acted as Vice President of Corona and Mr. Ferrer acted as Secretary. The Ferrers continued to manage Corona following the consummation of the Corona Transaction. Mr. Singh was also appointed to manage and operate Corona on behalf of the Thekkeks. The Ferrers, by virtue of acting as the majority controlling shareholders and the officers and directors of Corona, owed fiduciary duties to the Thekkeks, as minority shareholders of Corona.

10.   As of the date of this Stipulation, Plaintiffs alleged in the Complaint that the Ferrers

have not made any payments on the Loan. Plaintiffs alleged in the Complaint that Ferrers are thereby in breach of, among other things, their contractual obligations under the Note. Plaintiff's allege that the Ferrers' conduct after the consummation of the Corona Transaction also caused harm to the Thekkeks in the Corona Transaction because, among other things, it deprived the Thekkeks of their funds advanced to pay for the 49% equity interest in Corona, the equity interests purchased in connection with the Corona Transaction, and the collateral securing the Note. These actions caused substantial harm to the Thekkeks.

11. Plaintiffs allege that following the closing of the Corona Transaction, the Ferrers repeatedly represented themselves as, and acted as, the sole shareholders of Corona.

### C. The Corona Cases

12. On July 22, 2013, the Ferrers caused Corona to file petitions under chapter 11 of the Bankruptcy Code in the bankruptcy court. The bankruptcy petitions initiated three bankruptcy cases (collectively, the "Corona Cases"), that are substantively consolidated under the caption *In re Corona Care Convalescent Corporation*, Case No. 2:13-bk-28497-RK.

13. The Ferrers, together with Mr. Singh, and Mr. Rana, knew about and orchestrated the Corona Cases. Plaintiffs allege that the Ferrers breached their fiduciary duties in that they did not obtain the Thekkeks' authority prior to filing the Corona Cases. The filings immediately affected the value of the collateral securing the Loan. Additionally, Plaintiffs allege that the Ferrers acted deliberately, negligently and fraudulently because they did not hold any corporate meetings to inform the Thekkeks of the Corona Cases. Instead, Plaintiffs allege that the Ferrers fraudulently held themselves out as the sole directors and shareholders of Corona. Plaintiffs allege that Ferrers' failure to make payments on the Loan and subsequent filing of the Corona Cases significantly diminished the collateral securing the Note and, thus, the Thekkeks' ability to recover on the Loan. Plaintiffs allege that Ferrers' exercise of control over 100% of the equity interest in Corona necessarily deprived the Thekkeks of their property rights with respect to the 49% share they purchased for over $3 million. The Thekkeks alleged that the Ferrers' conduct was also malicious because it resulted in injury to the Thekkeks. The Ferrers disputed that allegation.

14. The Thekkeks alleged that the Ferrers subsequently alleged that they sold 49% of the equity interests in Corona to Mr. Singh and Mr. Rana in a September 2014 transaction. The Ferrers' representations as to ownership of Corona has changed multiple times since 2013; however, in all events, the Ferrers have represented that they owned at least 51% of the equity interests in Corona.

15. On July 22, 2013, four related SNF entities owned by the Ferrers filed petitions under chapter 11 of the Bankruptcy Code in the Bankruptcy Court. The bankruptcy petitions initiated the following bankruptcy cases (collectively, the "Pasadena Cases"). The debtors in the Pasadena Cases (the "Pasadena Debtors") leased real property owned by the Ferrers (the "Pasadena Property").

16. On or about August 11, 2014, the Pasadena Debtors, through their insiders, the Ferrers, filed a motion to dismiss the Pasadena Cases pursuant to a global settlement reached between the Ferrers, the Pasadena Debtors, and the Official Committee of Unsecured Creditors of the Corona Cases (the " (the "Committee"). Pursuant to the settlement, the Pasadena Cases would be dismissed to allow the Pasadena Debtors to refinance the Pasadena Property. The Thekkeks alleged that the Ferrers represented that the proceeds from the refinancing would fund a 50% distribution to holders of unsecured claims in the Corona Cases. Additionally, the Ferrers specifically represented that they had secured financing and personally guaranteed the distribution obligations to the unsecured creditors of Corona. The Court approved the proposed refinancing and dismissed the Pasadena Cases.

17. The Thekkeks allege that the refinancing never occurred and unsecured creditors of Corona never received a distribution as required under the settlement. Instead, the Committee filed a motion to enforce the settlement in the Corona Cases and the United States Trustee filed a motion to convert the Corona Cases to chapter 7 and appoint a chapter 7 trustee.

18. The court appointed a chapter 11 trustee in the Corona Cases. The chapter 11 trustee sold substantially all of the assets of Corona to an unrelated third party, in breach of their contractual obligations under the Note and Pledge Agreement. Subsequently, the Corona Cases

were converted to chapter 7. The Pasadena Cases were eventually reopened and converted to chapter 7 as well.

### D. The State Court Action

19. On September 20, 2016, the Thekkeks filed a complaint in the Superior Court of the State of California for the County of Contra Costa (the "State Court") initiating *Thekkek v. Singh, et al.*, Case No. C16-01822 (the "State Court Action"). The Thekkeks filed an amended complaint in the State Court Action on November 8, 2016.

20. The State Court Action asserts causes of action for fraud, negligence, breach of contract, rescission, and unjust enrichment against the Ferrers based on their conduct related to the Corona Transaction. Mr. Singh, Mr. Rana and Metro, among others, are also defendants in the State Court Action. Notably, the amended complaint in the State Court Action asserts that, in 2014, Mr. Singh, Mr. Rana, and Metro fraudulently transferred ownership of the Thekkeks 49% equity interest in Corona to a company jointly owned by Mr. Singh and Mr. Rana. The Thekkeks dispute that their equity interests in Corona were validly transferred.

21. The State Court Action is currently stayed before the State Court in light of this Bankruptcy Case.

### E. Related Bankruptcy Filings

22. In addition to the Corona and Pasadena Cases, the Ferrers have been involved in multiple individual and related cases, as detailed in the Adversary Complaint, most of which have been dismissed. In these filings, Thekkeks allege that the Ferrers have made various misrepresentations and contradictory representations of fact under oath.

### F. The Bankruptcy Case

23. On March 17, 2017, the Ferrers filed the instant Bankruptcy Case. The Ferrers have alleged that they have just $20.00 in cash a few years after receiving millions of dollars from the Thekkeks.

24. Based on their representations as to financial condition, the Ferrers seek a chapter 7 discharge in the Bankruptcy Case.

G.    **The Adversary Proceeding and Settlement**

25.    On June 23, 2017, the Thekkeks filed the Adversary Complaint wherein the Thekkeks asserted the following causes of action: for an accounting of all transactions, profits, losses, distributions, and other income or financial transactions relating to the their 49% equity interest in Corona, the Loan, or the Ferrers' 51% equity interest in Corona, and for an award of their allocation of such moneys, profits, distributions; for a determination that the Ferrers' indebtedness to the Thekkeks is not dischargeable pursuant to section 523 (a)(2), (a)(4), or (a)(6) of the Bankruptcy Code; and, for a determination that the Ferrers are not entitled to a discharge pursuant to section 727(a)(4), or (a)(7) of the Bankruptcy Code.

26.    During the Course of the Adversary Proceeding, the Thekkeks served the following discovery requests to the Ferrers: (1) Requests for the Production of Documents (served on November 12, 2018); Requests for Admissions (served on November 19, 2018); and Special Interrogatories (served December 13, 2018) (collectively, the "Thekkeks' Discovery").

27.    The Ferrer's time to respond to the Thekkek's Discovery has passed and the Ferrers have failed to respond. As a result of the Ferrer's failure to respond to the Thekkek's Discovery, the Ferrers acknowledge that all of the Thekkek's Requests for Admission are deemed admitted by operation of the Federal Rules of Civil Procedure, Rule 36.

28.    The Thekkeks and the Ferrers (collectively, hereinafter referred to as the "Parties") have negotiated and agreed, subject to Court approval, to the amount of the judgment that will be entered in favor of the Thekkeks, and against the Ferrers, in this Bankruptcy Case, and to the nondischargeability of the judgment debt, pursuant to the terms set forth in this Stipulation.

29.    The Parties acknowledge that the terms and conditions as set forth in this Stipulation are fair and reasonable, were negotiated by the Parties in good faith at arm's-length, and the Parties otherwise acted in good faith.

**STIPULATED COMPROMISE AND AGREEMENT**

The Parties stipulate and agree, that:

1. The Parties agree that Defendants, and each of them, admit no allegations contained herein and agree to this Stipulation only to avoid further litigation expense.

2. The Parties agree that the Thekkeks' motion to compel and for sanctions shall be immediately withdrawn upon the filing of this Agreement. However, if for any reason this Agreement is not accepted by the Court and/or Judgment is not entered, this Agreement shall not constitute a waiver of any right or remedy presently available under the Federal Rules of Civil Procedure, Rules, 26, 30, 33, 34 and 36 to the Thekkeks due to the Ferrer's failure to respond to the Thekkek's Discovery.

3. The Parties consent to entry of a valid, enforceable and final judgment establishing the amount of the debt owed by the Debtors to the Thekkeks, without the need for trial or adjudication of any issue of fact or law in the State Court or in this Court.

4. The Parties shall each execute this Stipulation and the Final Stipulated Judgment attached hereto as Exhibit "1" (the "Stipulated Judgment"), to be filed concurrently with the Request for Entry of Judgment. The Stipulation and the Stipulated Judgment will govern the issues between the Parties arising from and related to the Plaintiff's claims against Debtors.

5. The Debtors stipulate that the Stipulated Judgment will reflect that the Debtors owe the Plaintiffs a debt in the amount of $6,625,000.

6. The Debtors stipulate that their indebtedness to the Plaintiffs under the Stipulated Judgment is not dischargeable pursuant to section 523 (a)(2), (a)(4) and (a)(6) of the Bankruptcy Code and shall not be discharged in this Bankruptcy Case or in any future bankruptcy case that may be filed by either, or both, of the Debtors.

7. Within thirty (30) days of entry of the Stipulated Judgment, the Plaintiffs shall dismiss the Debtors from the State Court Action. The Plaintiffs expressly reserve their right to continue to pursue the State Court Action against the other Defendants named in the State Court Action.

8. The Parties respectively represent, warrant and agree that each has received independent legal advice from attorneys of his, her or its choice, and/or was given sufficient

opportunity and time to seek independent legal advice from attorneys of his, her or its choice, as to the advisability of agreeing to the final resolution of the Adversary Proceeding provided for in this Stipulation and the Stipulated Judgment, and as to the advisability of entering into and executing this Stipulation and the Stipulated Judgment.

9. The Parties respectively represent, warrant and agree that each has carefully read, and knows and understands the content and legal effect of this Stipulation and the Stipulated Judgment, and has willingly consented to their respective terms.

10. The Parties each warrant and represent that he, she or it has the power and authority to execute, deliver and perform its obligations under this Stipulation and the Stipulated Judgment, and that no further authorization is required to be obtained from any other persons or entities.

11. The provisions of this Stipulation shall inure to the benefit of the Parties, as well as to their respective successors and assigns.

12. The Parties agree to cooperate fully with each other to accomplish the terms of this Stipulation, including, but not limited to, executing such documents and taking such actions as may reasonably be necessary to implement the terms of this Stipulation. The Parties will use their best efforts, including all efforts contemplated by this Stipulation and any other efforts that may become necessary by order of this Court, or otherwise, to effectuate the terms of this Stipulation.

13. In the event that one of the Parties institutes any legal action, arbitration, or other proceeding against the other Party to enforce the provisions of this Stipulation and/or Stipulated Judgment, or to declare rights and/or obligations under this Stipulation and/or Stipulated Judgment, the prevailing Part(ies) shall be entitled to recover from the other Part(ies) its/their reasonable attorneys' fees and costs, including expert witness fees incurred in connection with any such enforcement actions.

14. This Stipulation may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Stipulation, which shall

Main Document    Page 10 of 15

be binding upon and effective as to all Parties. Facsimile or electronically transmitted signature pages shall have the same force and effect as original signature pages.

15. The Parties agree, and hereby irrevocably waive, any and all of their respective rights to in any way object to, seek reversal or reconsideration of, appeal, or otherwise challenge, this Court's approval of this Stipulation as well as any of the legal or factual findings on which this Stipulation is based. In addition, Defendants waive any rights, including without limitations any rights under Section 502(j) of the Bankruptcy Code or Rule 3008 of the Federal Rules of Bankruptcy Procedure, they may have for requesting or having a new trial; taxing costs or interest; opposing entry of the judgment; and/or appealing from the judgment entered.

16. This Court shall retain jurisdiction to resolve any disputes or controversies arising from, or related to, this Stipulation.

**IT IS SO STIPULATED.**

**PLAINTIFFS**

Dated: February 19, 2019

_____
Prema Thekkek

Dated: February 19, 2019

_____
Antony Thekkek

**DEFENDANTS**

Dated: February 12, 2019

_____
Felicidad Ferrer

Dated: February 12, 2019

_____
Renato Ferrer

1  APPROVED AS TO FORM AND CONTENT:

2  Dated February 19, 2019                    **RAINES FELDMAN LLP**

3

4                                              By: _____
5                                              Hamid R. Rafatjoo
                                               Attorneys for Prema Thekkek and Antony
6                                              Thekkek

7
   Dated:  February 11, 2019                   **LAW OFFICES OF JOSHUA R. ENGLE &**
8                                              **ASSOCIATES, INC.**

9

10                                             By: _____
                                               Joshua R. Engle
11                                             Attorneys for Defendants Felicidad Ferrer and
                                               Renato Ferrer
12

# EXHIBIT 1

## FINAL STIPULATED JUDGMENT

**RAINES FELDMAN LLP**
Hamid R. Rafatjoo (Bar No. 181564)
hrafatjoo@raineslaw.com
Stephen P. Farkas (Bar No. 234060)
sfarkas@raineslaw.com
1800 Avenue of the Stars
12th Floor
Los Angeles, CA 90067
Telephone: (310) 440-4100
Facsimile:  (310) 691-1367

Attorneys for Prema Thekkek and Antony Thekkek

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:17-bk-13256-ER |
| FELICIDAD FERRER and RENATO FERRER | Chapter 7 |
| Debtors. | |
| PREMA THEKKEK and ANTONY THEKKEK, | Adv. Case No. 2:17-ap-01334-ER |
| Plaintiffs, | **FINAL STIPULATED JUDGMENT ALLOWING CLAIM AND EXCEPTING DEBT FROM DISCHARGE** |
| v. | |
| FELICIDAD FERRER and RENATO FERRER, | |
| Defendants. | [No Hearing Required] |

-1-

     The Court has read and considered the *Stipulation for Entry of Judgment* filed on February 19, 2019 [Adv. Docket No. __] (the "Stipulation"), entered into by and between Plaintiffs Prema Thekkek and Antony Thekkek (collectively, the "Plaintiffs"), on the one hand, and Defendants Felicidad Ferrer and Renato Ferrer (collectively, the "Debtors"), on the other hand, and has found good cause to approve the Stipulation and enter this Final Stipulated Judgment.

     IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

     1.    Pursuant to the Stipulation, this Final Stipulated Judgment is entered on the Second, Third and Fourth claims for relief alleged in the Adversary Complaint [Adv. Docket No. 1], under 11 U.S.C. § 523(a)(2), (a)(4), and (a)(6);

     2.    Plaintiffs are hereby awarded this valid, enforceable Final Stipulated Judgment against the Debtors in the amount of $6,625,000;

     3.    The $6,625,000 debt owed by the Debtors under this Final Stipulated Judgment is excepted from discharge pursuant to section 523 (a)(2), (a)(4), and (a)(6) of the Bankruptcy Code, in this Bankruptcy Case and in any future bankruptcy case that may be filed by either, or both, of the Debtors; and

     4.    The Court shall retain jurisdiction to enforce the Stipulation for Entry of Judgment and this Final Stipulated Judgment.

###

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
1800 Avenue of the Stars, 12th Floor, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled (*specify*):
**STIPULATION FOR ENTRY OF JUDGMENT**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) February 20, 2019, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Joshua R Engle    josh@engle-law.com
- Sam S Leslie (TR)    sleslie@trusteeleslie.com, sleslie@ecf.epiqsystems.com;trustee@trusteeleslie.com
- Hamid R Rafatjoo    hrafatjoo@raineslaw.com, bclark@raineslaw.com;cwilliams@raineslaw.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) February 20, 2019 I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Via Overnight Mail
The Honorable Ernest M. Robles
United States Bankruptcy Judge
255 E. Temple Street, Suite 1560
Los Angeles, CA 90012

Via Email – (Chapter 7 Trustee)
Varand Gourjian, counsel for Wesley H. Avery,
Chapter 7 Trustee
Email: varand@gourjianlaw.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 2/20/2019 | Bambi Clark | /s/ Bambi Clark |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                    **F 9013-3.1.PROOF.SERVICE**